[Cite as *State v. Lemaster*, 2023-Ohio-4720.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

AUSTIN R. LEMASTER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 CO 0011**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2022 CR 641

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirm, Reverse and Remand in part.

---

*Atty. Vito J. Abruzzino*, Prosecuting Attorney, *Atty. Shelley M. Pratt,* Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Christopher P. Lacich,* Roth, Blair, for Defendant-Appellant.

Dated: December 18, 2023

**Robb, J.**

{¶1} Appellant, Austin R. LeMaster, appeals the judgment convicting him of having a weapon while under disability following a jury trial. Appellant argues his trial counsel was ineffective for failing to secure a plea agreement mid trial. He also claims the trial court erred by failing to include 90 days of jail-time credit in its sentencing judgment.

{¶2} For the following reasons, we find error in part. We affirm Appellant's conviction and reverse and remand in part for the trial court to re-issue its sentencing decision to include the 90-day jail-time credit.

<u>Statement of the Facts and Case</u>

{¶3} In November of 2022, Appellant was charged with having a weapon while under a disability in violation R.C. 2923.13(A)(2), a third-degree felony. He plead not guilty.

{¶4} The trial commenced on January 18, 2023. Three witnesses testified for the state. Salineville Police Sergeant Keith Evanoff testified he was dispatched to a residence to address a domestic dispute. He was told a gun may be involved and shots were fired. Upon his arrival, Evanoff spoke with Kristina Avis and her daughters. Kristina showed him a gun that was on a bench on her back porch. It was a 9mm handgun with the safety activated. Evanoff secured the weapon and placed it in his car. It had five rounds in it and one in the chamber, for a total of six rounds in the weapon. (Trial Tr. 176-182.)

{¶5} The department subsequently tested the weapon, and they determined it was fully operable. Three spent shell casings were also found. Kristina handed one casing to Evanoff, and he found two more on the porch.

{¶6} Appellant was not there when Evanoff arrived at the home. Appellant was later located and arrested at Kristina's home about two weeks after the incident. He was hiding under a table in the basement. Evanoff confirmed Appellant had a prior burglary conviction, which precluded him from possessing a firearm. (Trial Tr. 182-200.)

{¶7} After Appellant was read his *Miranda* rights, he informed Evanoff he was not the person who shot the firearm. Instead, Appellant told Evanoff it was a Mr. Kurpley,

not him. Appellant also told Evanoff that Kristina had lied, and she now wanted to change her statement. Appellant denied the gun belonged to him, and Kristina did not recant or change her story. (Trial Tr. 200-211.)

**{¶8}** Kristina Avis also testified at trial. She lives with her three children in Salineville. At the time, Appellant was her fiancé. They dated for about two years and have since ended their relationship. In October of 2022, Appellant was living with her as well. She called the police on the date of the incident in part because her daughter was "being unruly and took off." She also called the police because of the gunshot fired in her yard. (Trial Tr. 217-221.)

**{¶9}** Kristina said Appellant was trying to break up an altercation between herself and her daughter. The gun came from inside her house. Appellant brought it outside. He told Kristina he fired it to stop their fight. She and her daughter were outside. Kristina then retrieved the gun and turned the safety on. Appellant knew the police were contacted, and he left. Kristina agreed Appellant asked her not to appear. (Trial Tr. 221-224.) Kristina said she did not know Appellant had a gun, and she did not allow guns in her home. (Trial Tr. 235.)

**{¶10}** One of Kristina's daughters also testified. She was sixteen years old at the time of trial. She explained that she and her mother were in an altercation, and Appellant was yelling at them to stop fighting. When they did not, he retrieved a gun from the bedroom he shared with her mother. He fired the gun from the doorway into the backyard. The daughter was in the kitchen behind him at the time. She saw the gun in his possession after he fired it. (Trial Tr. 238-242.)

**{¶11}** After the jury reached its verdict, the court proceeded directly to sentencing. Appellant was sentenced to 30 months in prison. (January 19, 2023 Judgment.)

**{¶12}** Appellant raises two assigned errors on appeal.

<u>Assignment of Error: Ineffective Assistance of Trial Counsel</u>

**{¶13}** Appellant's first assigned error asserts:

"Whether trial counsel was ineffective for failure to request a break in the trial and seek a plea, upon Defendant-Appellant's tacit request?"

**{¶14}** To establish a claim of ineffective assistance of counsel, a defendant must show both his trial counsel's performance was deficient, in that it fell below an objective

standard of care, and the deficient performance resulted in prejudice. *State v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). The burden is on the defendant to prove ineffectiveness of counsel. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). A finding of ineffective assistance of counsel depends on the facts and circumstances in each case. *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 10.

**{¶15}** Licensed attorneys in Ohio are presumed competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In evaluating trial counsel's performance, appellate review is highly deferential because of the strong presumption counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142-143, citing *Strickland* at 689. In fact, appellate courts are prohibited from second-guessing trial counsel's strategic decisions. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

**{¶16}** At the sentencing portion of the hearing, Appellant's trial counsel stated:

Your Honor, as for my client having no remorse for his actions, I would indicate that, while Ms. Avis was testifying, my client became visibly upset and was very emotional during her testimony. In fact, I think that the deputy or Ms. Hill had to get him some Kleenex, so that he could compose himself while she was testifying. In addition, Your Honor, I would indicate, while she was testifying, he leaned over to me and asked me to make it stop, that he didn't want her to have to testify. So I, of course, didn't know what to do at that point.

I mean, we were in the middle of a jury trial, so I certainly wasn't going to interrupt the proceedings, but my client is certainly remorseful for what happened here.

(Trial Tr. 295.)

**{¶17}** Appellant relies on the above for the contention that his trial counsel should have stopped the trial and attempted to engage in plea negotiations. There is no indication at what point during Kristina's testimony the above-described behavior occurred. There is also no indication by his trial counsel that Appellant wanted to stop the proceedings to negotiate or enter a plea agreement. Instead, his trial counsel relied

Case No. 23 CO 0011

on his behavior during trial as demonstrating remorse for his conduct to secure a reduced sentence.

**{¶18}** Regardless, we disagree that Appellant's trial counsel's statements at sentencing demonstrate error or that her conduct fell below an objective standard of care. Appellant's indication that he did not want his ex-fiancée to testify may have been for several reasons. One potential reason was Kristina's fear of testifying based on her concerns expressed at trial over her safety. Kristina testified she was afraid of Appellant's father and sister. Further, during Kristina's testimony, Appellant's sister was admonished by the court for using her phone and potentially recording testimony. She was directed to give her phone to the bailiff to determine if she had recorded the trial. (Trial Tr. 225-227.)

**{¶19}** Appellant likewise may have been trying to prevent Kristina from testifying because it was too emotionally painful for him since the two were no longer a couple. Alternatively, maybe Appellant was feeling overwhelmed by the mounting testimony against him, including the fact that Kristina appeared at trial and did not recant her story. Nevertheless, it was well within trial counsel's discretion to proceed as she did, especially since there is no indication that Appellant wanted to stop her testimony to enter a plea agreement. Accordingly, we decline to find counsel erred.

**{¶20}** As for the prejudice prong, it too lacks merit since there is nothing showing the state would have been willing to enter a plea at this stage of the trial, even assuming this was the reason Appellant wanted to prevent Kristina from testifying.

**{¶21}** Further, the state adds that plea negotiations had been unsuccessful before trial, and the state had withdrawn its offer on the record at a January 13, 2022 status conference less than a week before trial. Consistent with the state's argument, the prosecutor stated in part at this hearing:

> I did provide a proposed plea agreement in an attempt to see if this case could be resolved short of trial. I have been advised that the Defendant is not interested in doing that, so the State will be prepared to proceed on Wednesday. * * * And any offer previously extended is hereby withdrawn.

(January 13, 2023 Tr. 3.)

{¶22} Further, the trial was well underway when Kristina began testifying. The jury was empaneled and Sergeant Evanoff had already testified. There is nothing showing the state would have been willing to entertain plea negotiations this far into trial. Thus, we cannot find that "but for counsel's deficient performance, there exists a reasonable probability that the result of the proceeding would have been different[.]" *State v. Davis*, *supra,* at ¶ 10.

{¶23} Appellant's first assigned error lacks merit and is overruled.

Assignment of Error Two:  Jail-Time Credit

{¶24} Appellant's second assignment of error asserts:

"Whether the trial court committed error and abused its discretion when its judgment entry erroneously stated that the Defendant-Appellant was entitled to 0 days of credit, when at sentencing it was indicated, he was entitled to 90 days?"

{¶25} Appellant contends and the state agrees that the trial court erred in its sentencing entry by failing to include the 90 days of jail-time credit announced at the sentencing hearing. We agree.

{¶26} During the sentencing hearing, the parties discussed jail-time credit and the amount of time due to Appellant. The trial court stated: "I did the calculation. You were arrested on October 21st of 2022. That is 89 days credit. I believe that counts today. * * * 90 days. So we are at exactly 90 days today. So you will get credit served for 90 [days] served." (Trial Tr. 304.)

{¶27} However, the trial court failed to include this jail-time credit in its judgment, which states in part: "The Defendant is therefore Ordered conveyed to the custody of the Ohio Department of Corrections and credit for zero (0) days is granted as of this date." (January 19, 2023 Judgment.)

{¶28} Because the discrepancy is clear from the record and the state agrees the court erred in this regard, we find error. We reverse and remand for the trial court to issue a nunc pro tunc sentencing entry that includes the 90 days jail-time credit announced at the sentencing hearing.

Conclusion

{¶29} We affirm Appellants' conviction and reverse and remand in part for the trial court to issue a nunc pro tunc sentencing entry to include 90 days jail-time credit.

Waite, J., concurs.

D'Apolito, P.J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the final judgment and order of this Court is that the judgment of the Court of Common Pleas of Columbiana County, Ohio, regarding the Appellant's conviction, is affirmed. We hereby reverse and remand this matter in part for the trial court to issue a nunc pro tunc sentencing entry to include 90 days jail-time credit according to law and consistent with this Court's Opinion. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**